AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
## for the
### District of New Mexico



**FILED**
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Gray Dodge Ram, part white on the passenger side front quarter panel, 2 door truck, no license plate, and no visible VIN

Case No. 24MR1968

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the _____ District of __New Mexico__, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1153 | Offenses Committed within Indian Country |
| 18 U.S.C. § 113(a)(3) | Assault with a Deadly Weapon |
| 18 U.S.C. § 924(c)(1)(A)(iii) | Using and Carrying a Firearm During and in Relation to a Crime of Violence and Discharging Said Firearm |

The application is based on these facts:
See attached affidavit

☒ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Molly Schommer, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__telephone__ *(specify reliable electronic means)*.

Date: 10/25/2024

*Judge's signature*

City and state: Albuquerque, New Mexico

Steven C. Yarbrough, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN THE MATTER OF THE SEARCH OF:

GRAY DODGE RAM, PART WHITE ON
THE PASSENGER SIDE FRONT
QUARTER PANEL, 2 DOOR TRUCK,
NO LICENSE PLATE, AND
NO VISIBLE VIN

Case No. 24MR1968

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Molly Schommer, Special Agent of the Federal Bureau of Investigation ("FBI"), United States Department of Justice ("DOJ"), having been duly sworn, state:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the FBI and have been so employed since April of 2021. As such, I am a federal law enforcement officer within the meaning of Rule 41 of the Federal Rules of Criminal Procedure. I am currently assigned to the Violent Crime/Violent Crimes Against Children ("VC/VCAC") Squad at the Albuquerque Field Office of the FBI. I primarily investigate Indian Country cases, such as homicide and child sexual assault. I have received on the job training from other experienced agents, detectives, and correctional officers in the investigation of criminal actors and criminal enterprises. My investigative training and experience includes, but is not limited to, the FBI Training Academy at Quantico, Virginia; interviewing subjects, targets, and witnesses; writing affidavits for and executing search and arrest warrants; collecting evidence; conducting surveillance; and analyzing public records. Additionally, I received advanced training and instruction from the United States Indian Police Academy related to Indian Country offenses and the DOJ National Indian Country Training Initiative regarding investigating and prosecuting federal sexual assault cases. Before becoming an FBI agent, I was a criminal prosecutor for two

1

years. Through my training and experience both as an FBI Special Agent and city and county prosecutor, I am familiar with techniques used by criminal actors and criminal enterprises.

2. This affidavit is made in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search a gray Dodge Ram, described further in Attachment A, hereinafter referred to as "TARGET VEHICLE", that is currently stored at the FBI Albuquerque Field Office, 4200 Luecking Park Avenue Northeast, Albuquerque, New Mexico 87107, for evidence, instrumentalities, and contraband described further in Attachment B, concerning violations of 18 U.S.C. § 1153, Offenses Committed within Indian Country, 18 U.S.C. § 113(a)(3), Assault with a Deadly Weapon, and 18 U.S.C. § 924(c)(1)(A)(iii), Using and Carrying a Firearm During and in Relation to a Crime of Violence and Discharging Said Firearm.

## PURPOSE OF AFFIDAVIT

3. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1153, offenses committed within Indian Country, 18 U.S.C. § 113(a)(3) Assault with a Deadly Weapon, and 18 U.S.C. § 924(c)(1)(A)(iii) Using and Carrying a Firearm During and in Relation to a Crime of Violence and Discharging Said Firearm have been committed by Harold PEREA, Year of Birth ("YOB") 1992, a member of the Navajo Nation. There is also probable cause to search the TARGET VEHICLE and any electronic data recorder or infotainment data located in the TARGET VEHICLE as described further in Attachment A, for evidence, instrumentalities, contraband, and/or fruits of these crimes, further described in Attachment B.

4. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law-enforcement personnel and witnesses. I have not included

2

every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary for the limited purpose of establishing probable cause to conduct a search. Additionally, unless otherwise indicated, wherever in this Affidavit I assert that an individual made a statement, that statement is described in substance herein and is not intended to be a verbatim recitation of such statement. Furthermore, unless otherwise indicated, all statements contained in this Affidavit are summaries in substance and in part. The following is true to the best of my knowledge and belief.

## PROBABLE CAUSE

5.  My basis for believing that evidence is located within the TARGET VEHICLE, including the infotainment and telematics systems, is as follows:

6.  On October 7, 2024, on the Torreon Chapter of the Navajo Nation, on Lower Mission Road, 7 Miles Southwest of the Torreon Chapter House, S.N., YOB 1989, hereinafter "Jane Doe", was at this residence with her girlfriend, A. R., YOB 1978, hereinafter "Witness 1". The incident involved Jane Doe's cousin's brother, PEREA, who drove a gray Dodge Truck. The incident took place within the exterior boundaries of the Navajo Nation and both Jane Doe and PEREA are members of the Navajo Nation.

7.  On October 8, 2024, Jane Doe was interviewed and provided the following information regarding the incident. Jane Doe had two cars, which were both Ford Taurus's. One was dark and one was a light silver gray. Jane Doe was pulling her car back to the residence. Jane Doe informed that PEREA'S girlfriend was asking for help and followed Jane Doe and Witness 1 to where Jane Doe's car was at. PEREA was going crazy driving around with the truck looking for her. PEREA shot at his girlfriend with a shotgun. Then PEREA shot at Witness 1 while she was standing beside her. PEREA'S girlfriend ran and PEREA followed her. PEREA started hitting his

3

girlfriend with his crutches. PEREA'S girlfriend took off. PEREA then drove his truck and went head on with Jane Doe's car, which Jane Doe was outside of standing between her two cars. PEREA hit the car and Jane Doe got pinned up between the cars. Jane Doe got out. PEREA came around and started hitting Jane Doe's car again. PEREA'S brother and his brother's girlfriend were also there during the incident. Jane Doe was airlifted in a helicopter. Jane Doe was told she had fluid in her lungs. Jane Doe's leg was bruised from her abs to her hip. Jane Doe had a little crack on her rib, which punctured her lungs and was where the fluid went in.

8. On October 8, 2024, Witness 1 was interviewed and informed that PEREA hit Jane Doe's vehicle three times and Jane Doe was hit by her vehicle.

9. On October 8, 2024, the site of the incident, approximately three miles in on Lower Mission Road, was searched and one shotgun shell was seized.

10. On October 16, 2024, myself, another FBI Agent, and a Navajo Nation Criminal Investigator ("CI") went to the residence of PEREA. The other FBI Agent previously spoke with PEREA at this residence, which was on October 4, 2024, and PEREA informed the TARGET VEHICLE was what he was currently driving. Additionally, on October 16, 2024, the other FBI Agent and Navajo Nation CI asked a neighbor if the TARGET VEHICLE was PEREA'S truck and she said yes. The TARGET VEHICLE was observed on location matching the description, which Jane Doe informed PEREA drove a gray Dodge truck, and a firearm was visible inside the TARGET VEHICLE.

11. On October 16, 2024, a Search and Seizure Warrant on Oral Testimony was obtained to seize and search the TARGET VEHICLE that was located at a residence on the Torreon Chapter of the Navajo Nation off Lower Mission Road. Pursuant to that oral search warrant, the TARGET VEHICLE was photographed, sealed, seized from the residence, and towed to the FBI

Albuquerque Field Office, 4200 Luecking Park Avenue Northeast, Albuquerque, New Mexico 87107, where it is currently being stored. The recorded oral testimony was later downloaded and determined to be inaudible. Efforts were made to enhance the audio but have not been completely successful. Therefore, this affidavit is being submitted to search the TARGET VEHICLE.

12.     Later, on October 16, 2024, after the oral search warrant was obtained, PEREA was interviewed and provided the following information regarding the incident. PEREA obtained the TARGET VEHICLE about two or three weeks ago from a friend. PEREA remembered arguing with his girlfriend that day and being in the TARGET VEHICLE. PEREA might have hit her car but was not too sure, and stated it was two or three times. PEREA reversed and hit the front of the car. Jane Doe was standing by the car with PEREA'S girlfriend and Witness 1 and talking smack. PEREA informed he kind of blacked out and had anger in him. PEREA was not drinking that day, did not take drugs, and did not smoke marijuana that day. PEREA had a prescription for Gabapentin, which was to take one tablet three times a day. PEREA took two or three that day at once, which was around 2:30 p.m. or 3:00 p.m. PEREA informed he did not have the shotgun with him and left it at his residence. The shotgun was PEREA'S friend's who gave it to PEREA a few months ago for protection.

13.     After the oral warrant was obtained, the FBI received a Navajo Nation Incident Report, which indicated on October 7, 2024, Navajo Nation Police Officers went to PEREA'S residence, but no contact was made. The vehicle, which was a gray in color single cab 2500 Ram pickup truck, was located in the same area. Officers did see damages which corresponded to the damages to one of the parked vehicles Jane Doe got pinned between. The truck had pre-existing damages, but the new damages were to the front bumper mostly on the driver side. There was also vehicle fluid on the bumper and front driver side tire, which was flat. Officers did find spent 12-

gauge shells, which were unknown if they were from earlier, along with old dusty .22 and 9mm ammunition on the passenger side floorboard, machetes, makeshift blades, a bag full of notes, old tools, and a wallet with insurance cards with PEREA'S girlfriend's name. No other items were found, and nothing was seized.

### TECHNICAL BACKGROUND REGARDING THE VEHICLE AND ITS INFOTAINMENT AND TELEMATICS SYSTEMS

14. Based on my training and experience, as well as discussions with other experienced law enforcement officers and witnesses, I have learned that:

   a. Many modern motor vehicles are equipped with sensors, cameras,[1] transmitters, and electronic control units ("ECUs")[2] to monitor and manage vehicle operations, track vehicle movement, and exchange information with other vehicles and infrastructure.[3] These systems also enable motor vehicles to interface with various types of mobile devices to facilitate the use of applications, including third-party navigation, wireless telephone, multimedia streaming, and the like. To perform

---

[1] As of 2018, the US National Highway Safety Transportation Agency requires new motor vehicles sold in the United States to have backup cameras installed by the manufacturer.

[2] "ECU" is a generic term applied to any embedded computer that controls one or more electrical systems within a vehicle. ECUs are typically installed in a vehicle by the original equipment manufacturer during the manufacturing process. There are many types of ECUs, and as vehicles have more features each year, the number of ECUs in each motor vehicle increases. Newer motor vehicles can integrate as many as 150 ECUs, ensuring, in theory, that each part of the motor vehicle is running properly. Some examples of common ECUs include the Engine Control Module, Transmission Control Module, Brake Control Module, and Suspension Control Module, as well as the Telematics Control Unit and Infotainment Control Unit.

[3] The infotainment and telematics systems in motor vehicles are not the same as "black box" recorders. Black box recorders are called event data recorders ("EDRs") or crash data recorders. These black box recorders can record vehicle speed, engine speed, steering angle, throttle position, braking status, force of impact, seatbelt status, and airbag deployment. In 2006, the US National Highway Traffic Safety Administration ("NHTSA") adopted regulations requiring EDRs to uniformly collect certain crash data to assist crash investigators with accident reconstruction efforts. In 2012, NHTSA proposed requiring manufacturers to install EDRs in all new cars and trucks, but in 2019, the NHTSA withdrew the proposal because automakers have voluntarily installed the devices in nearly all vehicles.

6

these computing functions, modern motor vehicles collect, process, and store significant volumes of data.

b. Two commonly installed ECUs within motor vehicles are infotainment and telematics systems—sometimes referred to as the Telematics Control Unit and the Infotainment Control Unit. These systems typically retain large amounts of user data within the vehicle.

c. A vehicle's infotainment system combines hardware and software to provide entertainment features. Many infotainment systems allow drivers and passengers to connect their handheld electronic devices to the vehicle. When connected, the driver and/or passengers may gain access to, for example, Global Positioning System ("GPS") navigation, video players, music streaming, voice calling, texting, and traffic data. Many systems enable talking hands-free with Bluetooth connectivity, listening to music, watching videos, or pulling up a mapped route to a destination. Many of these features are accessible via the (usually interactive) console located on the front dashboard of the vehicle.

d. A vehicle's telematics system typically collects and stores diagnostic data from various systems (other ECUs) within the vehicle, including historical navigation points, speed, and event data. Historical event data may include information regarding when the car's trunk, doors, and windows opened and closed, when headlights turned on and off, and when gears changed or brakes were engaged.

e. The main difference between the infotainment and telematics systems is that the infotainment system is about entertainment for the occupants of the vehicle, and the telematics system is for collecting and reporting (transmitting) information—such

7

as vehicle use data, maintenance requirements, and automotive servicing—about the vehicle. Typical telematics data may include turn-by-turn navigation, remote access, emergency calling, and maintenance notifications. Examples of vehicle telematics systems include General Motors' "OnStar," BMW's "Assist," and Mercedes' "mbrace." Some of these systems are integrated multimedia navigation and telematics systems in one (combined infotainment/telematics systems), like Toyota's "Entune" and Ford's "Sync."

f. The data generated, collected, transmitted, and retained by motor vehicles can provide valuable information in law enforcement investigations of crimes. For example, many infotainment systems support the importation of content and other data information from a particular user's mobile device. Such data may include content that may provide attribution to particular user(s), including mobile device identifiers, wireless telephone numbers, user account details, passwords, user voice profiles, contact lists, call logs, text messages, pictures, e-mail, videos, web history, GPS coordinates, and other historical navigation information.

g. I am aware that the computers (ECUs) within many motor vehicles store data for prolonged periods of time. Furthermore, even after a previously-connected mobile device is removed from the physical vehicle, data may remain within the digital storage of the system. Such stored data can be used to identify locations, victims, witnesses, associates, and co-conspirators and may include communications and images of criminal activity. In sum, a forensic examination of a motor vehicle's infotainment and telematics systems may reveal the vehicle's GPS location

8

information, movements, operations, and user data at critical moments before, during, and after the commission of a crime.

h. As previously stated, the TARGET VEHICLE is a gray Dodge Ram and is located at the FBI Albuquerque Field Office, 4200 Luecking Park Avenue Northeast, Albuquerque, New Mexico 87107. To complete a forensic extraction, law enforcement may need to relocate the TARGET VEHICLE and/or request assistance from New Mexico State Police.

i. It may also be necessary, temporarily, to remove trim and other components of the TARGET VEHICLE to access the information subject to search. It may also be necessary to repair the device, replace the screen, reconnect wires, and replace batteries. It may be necessary to employ advanced forensic processes to bypass locked display screens and other data access restrictions. Advanced processes may include potentially destructive forensic techniques used to remove memory chips from computers and other electronic storage containers that may be found within the TARGET VEHICLE. In the event that potentially destructive processes are required to perform this extraction, parts of the TARGET VEHICLE may be destroyed and rendered useless.

j. Furthermore, it may be necessary to return to the TARGET VEHICLE and reconnect the infotainment and telematics systems to the TARGET VEHICLE'S power source to perform the extraction using forensic software. This is because there are various computer networks working simultaneously when a vehicle is powered on, and, in some vehicles, the infotainment and telematics systems require the other networks to work in tandem to complete the data extraction.

    k. The requested warrant authorizes a later review of the media and information seized or copied from the TARGET VEHICLE, which review may continue past the date required for execution of the warrant.

## **CONCLUSION**

15. Based on information contained herein, I believe probable cause exists indicating PEREA violated 18 U.S.C. § 1153, Offenses Committed within Indian Country, 18 U.S.C. § 113(a)(3), Assault with a Deadly Weapon, and 18 U.S.C. § 924(c)(1)(A)(iii), Using and Carrying a Firearm During and in Relation to a Crime of Violence and Discharging Said Firearm. As such, I am seeking authorization to search the TARGET VEHICLE, further described in Attachment A, for evidence of the criminal offenses, more specifically described in Attachment B.

16. Additionally, I submit this affidavit supports probable cause for a warrant authorizing the extraction and forensic examination of electronically stored information within the TARGET VEHICLE, as described in Attachment A, to seize the data described in Attachment B.

17. This affidavit was reviewed and approved by Deputy Supervisory Assistant United States Attorney Alexander Flores.

Respectfully submitted,

*Molly Schommer*
Molly Schommer
Special Agent
Federal Bureau of Investigation

ELECTRONICALLY SUBMITTED AND TELEPHONICALLY SWORN TO BEFORE ME ON OCTOBER 25, 2024.

*Steve Yarbrough*
HONORABLE STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF NEW MEXICO

## ATTACHMENT A

The property to be searched is a gray Dodge Ram, part white on the passenger side front quarter panel, two door truck, with no license plate. There is also no visible VIN. There is no tailgate, black rims, and a tow hitch. There is also a sticker in the back window on the driver's side and on the back bumper on the passenger's side. Hereinafter, "TARGET VEHICLE" with photographs shown below.

This warrant authorizes, *inter alia*, the forensic examination of the TARGET VEHICLE'S infotainment and telematics systems for the purpose of identifying the electronically stored information described in Attachment B.





11

## ATTACHMENT B

1. From the TARGET VEHICLE listed in Attachment A, all evidence related to violations of 18 U.S.C. §§ 1153, 113(a)(3), and 924(c)(1)(A)(iii), including:

   a. Firearms, ammunition, firearm accessories, and shell casings;

   b. Vehicle infotainment and telematics system;

   c. Black box, which is an electronic data recorder;

   d. Cell phones;

   e. DNA swabs and finger prints;

   f. Paint and/or markings from Jane Doe's vehicle;

   g. Location information;

   h. Identifying owner information; and

   i. Anything else relating to 18 U.S.C. §§ 1153, 113(a)(3), 924(c)(1)(A)(iii), and/or Jane Doe.

2. Additionally, all electronically stored information on the TARGET VEHICLE'S infotainment and telematics systems described in Attachment A, that involves PEREA and relates to violations of 18 U.S.C. §§ 1153, 113(a)(3), and 924(c)(1)(A)(iii) on October 7, 2024, including:

   a. Stored electronic data, information, images, and related digital storage, and/or vehicle diagnostic data from electronic systems within the TARGET VEHICLE, including, but not limited to:

      i. unique device identifiers;

      ii. media files;

      iii. call logs;

      iv. contacts;

      v. SMS;

    vi. Bluetooth connections;

    vii. USB connections;

    viii. voice commands;

    ix. voice recordings;

    x. voice calling;

    xi. web browser history;

    xii. Wi-Fi connections;

    xiii. speech recognition;

    xiv. time updates;

    xv. track logs;

    xvi. traction events;

    xvii. traffic updates;

    xviii. stop/start log;

    xix. GPS warnings;

    xx. hard acceleration;

    xxi. hard braking;

    xxii. light status;

    xxiii. odometer reading;

    xxiv. gear shifts;

    xxv. historical navigation data;

    xxvi. historical speed data;

    xxvii. historical event data; and

    xxviii. data streaming services and related content.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and

instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.